# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS NETWORK OF CHARTER SCHOOLS, INTRINSIC SCHOOLS, and THE MONTESSORI NETWORK D/B/A THE MONTESSORI SCHOOL OF ENGLEWOOD, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 24-cv-5057 |
| | ) | |
| v. | ) | The Honorable John Robert Blakey |
| | ) | |
| KWAME RAOUL, in his official capacity as the Attorney General for the State of Illinois, The BOARD OF EDUCATION OF THE CITY OF CHICAGO, and the ILLINOIS STATE BOARD OF EDUCATION, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**THE STATE DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT............................................................................................................................ 5

    I.   Plaintiffs have no likelihood of success on the merits. ........................................................ 6

        A.  The Act is not preempted by the NLRA because Illinois charter schools are political subdivisions of the State, or, in the alternative, are state contractors. ............ 6

            1.  Illinois charter schools are subdivisions of the State and are not governed by the NLRA. ................................................................................................ 7

                 a.  State law expressly provides that Illinois charter schools are part of the State. ................................................................................................ 7

                 b.  Plaintiffs' reliance on NLRB caselaw fails, both because that case law does not bind the Court and because Illinois charter schools are part of the State even under the NLRB's test. ............................................... 9

            2.  In the alternative, Illinois charter schools are government contractors, and the State may permissibly impose conditions on its contracts with them............. 12

        B.  The Act does not violate Plaintiffs' First Amendment rights. ................................... 15

            1.  Plaintiffs have not established that they have standing to bring their First Amendment claim. ................................................................................. 15

            2.  As political subdivisions of the State, Plaintiffs cannot bring a First Amendment claim against the State. ................................................................ 16

            3.  Even if Plaintiffs could bring a First Amendment claim, they are unlikely to succeed because the union neutrality clause is an acceptable condition on state funding. ................................................................................ 17

         C.  Plaintiffs' claims under the Illinois Constitution are barred under the Eleventh Amendment. .......................................................................................... 19

        D.  The Eleventh Amendment bars Plaintiffs' claims against the Attorney General. ....... 20

    II.  The other preliminary injunction factors weigh against granting a preliminary injunction. ............................................................................................................... 21

        A.  Plaintiffs cannot demonstrate irreparable harm. ......................................................... 22

        B.  The balance of harms weighs decidedly against injunctive relief. ............................. 24

        C.  No injunction should be entered against the Attorney General. ............................... 25

CONCLUSION........................................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013)................. 17, 18

*Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074
(9th Cir. 2017)................................................................................................... 13

*Bd. of Educ. v. Ill. Charter Sch. Comm'n*, No. 1-16-2084, 2018 IL App (1st) 162084.................. 8

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012)............................................................... 15

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors
of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218 (1993).................................. 12, 13, 14

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) ................... 13

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184
(2d Cir. 2012)................................................................................................... 13

*Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821 (7th Cir. 1998) ........................... 24

*Camelot Banquet Rooms, Inc. v. United States SBA*, 24 F.4th 640 (7th Cir. 2022) ..................... 19

*Cardinal Towing & Auto Repair, Inc. v. City of Bedford* 180 F.3d 686 (5th Cir. 1999).............. 13

*Chevron, U.S.A. Inc., v. Nat. Res. Def. Council., Inc.*, 467 U.S. 837 (1984)................................ 10

*Chicago Mathematics & Sci. Academy Charter Sch., Inc.*, 359 N.L.R.B. 455 (2012)............. 9, 11

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996).................. 21

*Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631 (7th Cir. 1996) ......................... 14

*Cook Cty. Republican Party v. Pritzker*, 487 F. Supp. 3d 705 (N.D. Ill. 2020) .......................... 20

*Del. State Sportmen's Ass'n. Inc. v. Del. Dept' of Safety & Homeland Sec.*,
Nos. 23-1633, 23-1634 & 23-1641, __ F.4th __,
2024 U.S. App. LEXIS 17214 (3rd Cir. 2024) ..................................................... 22, 23, 25

*Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2019) ..................................................... 20, 21

*Ex Parte Young*, 209 U.S. 123 (1908) ................................................................... 20

*Fenje v. Feld*, No. 01 C 9684, 2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002) .............. 23

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019)..................................... 5

*Graham v. Bd. of Educ.*, 8 F.4th 625 (7th Cir. 2021) ................................................... 8

*Heabler v. Madigan*, No. 12-cv-6193, 2013 U.S. Dist. LEXIS 136986
(Sep. 24, 2013)................................................................................................... 21

*Hotel Employees & Restaurant Employees Union v. Sage Hospitality Resources, LLC*,
390 F.3d 206 (3d Cir. 2004)............................................................................... 13

*Illinois Republican Party v. Pritzker, 973 F.3d 760 (7th Cir. 2020)*......................................... 5, 6

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................. 20

ii

*Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir. 1986) ................................................ 6

*Loper Bright Enters. v. Raimondo*, 219 L.Ed.2d 832 (2024)...................................................... 10

*Lukaszczyk v. Cook Cty.*, 47 F.4th 587 (7th Cir. 2022) ................................................ 19

*Maryland v. King*, 567 U.S. 1301 (2012) ...................................................... 25

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)........................................................... 5

*Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765 (7th Cir. 2011) .............................................. 24

*Michigan Bldg. & Const. Trades Council v. Snyder*, 729 F.3d 572 (6th Cir. 2013) ................... 13

*Nampa Classical Acad. v. Goesling*, 447 Fed. Appx. 776 (9th Cir. 2011)............................. 16, 17

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................. 24

*NLRB v. Nat. Gas Util. Dist. of Hawkins Cnty.*, 402 U.S. 600 (1971) ........................................ 10

*Northern Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*,
    431 F.3d 1004 (7th Cir. 2005) ........................................................ 13, 14, 15

*Northern Kane Educ. Corp. v. Cambridge Lakes Educ. Ass'n*,
    394 Ill. App. 3d 755 (4th Dist. 2009).................................................................. 4

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)........................................................ 5, 22

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984)...................................... 19, 20

*Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722
    (7th Cir. 1998).................................................................................. 24

*Preston v. Bd. of Trs. of Chi. State Univ.*, 120 F. Supp. 3d 801 (N.D. Ill. 2015) ........................ 23

*Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ........................... 24

*Rizzo v. Goode*, 423 U.S. 362 (1976).......................................................... 11, 25

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)..................................... 6

*Ruiz v. Pritzker*, No. 22-cv-07171, 2024 U.S. Dist. LEXIS 53683
    (N.D. Ill. Mar. 26, 2024).......................................................................... 21

*Rust v. Sullivan*, 500 U.S. 173 (1991).......................................................... 19

*Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437 (7th Cir. 1992) .................................... 21

*Sierakowski v. Ryan*, No. 98-cv-7088, 1999 U.S. Dist. LEXIS 6573
    (N.D. Ill. Apr. 26, 1999) ........................................................................ 21

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020)........................................... 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................................................... 15

*Travis v. Illinois Dep't of Corr.*, No. 18 C 00282, 2019 WL 2576546
    (N.D. Ill. June 24, 2019) ........................................................................ 20

*Urbina v. Noble Network of Charter Sch.*, 2019 IL App (1st) 181046-U* .................................. 8

*Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770 (5th Cir. 2021) ......................... 11, 12

*Williams v. Mayor of Baltimore*, 289 U.S. 36 (1933) ................................................. 16

*Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7 (2008) ........................................................ 5

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353(2009)............................................. 16, 19

**Statutes**

29 U.S.C. § 152............................................................................................................. 7

29 U.S.C. § 158............................................................................................................. 7

105 ILCS 5/Art. 27A................................................................................................... 20

105 ILCS 5/27A-1......................................................................................................... 3

105 ILCS 5/27A-2......................................................................................................... 3

105 ILCS 5/27A-3......................................................................................................... 5

105 ILCS 5/27A-5...................................................................................................... 3, 7

105 ILCS 5/27A-6......................................................................................................... 4

105 ILCS 5/27A-9......................................................................................................... 4

105 ILCS 5/27A-11....................................................................................................... 3

115 ILCS 5/1................................................................................................................. 2

115 ILCS 5/2................................................................................................................. 7

745 ILCS 10/1-101, *et seq.* ......................................................................................... 4

**INTRODUCTION**

The State of Illinois created the governing statute for Illinois public schools though its School Code, 105 ILCS 5/, *et seq*. Part of the School Code governs the creation and regulation of charter schools in Illinois, through the Charter Schools Law, 105 ILCS 5/27A-1, *et seq*. Charter schools are a type of public school that was created to allow for innovative and flexible educational programs while still ensuring compliance with other state requirements, all within the public school system. All charter schools operate under a charter, or agreement, between the school and its authorizer, such as the Illinois State Board of Education or the Chicago Public Schools system.

As public school teachers, charter school employees are entitled to certain state immunities, retirement benefits, and the protections afforded public school teachers under the Illinois Educational Labor Relations Act ("IELRA"). Because charter schools are created by the State and part of the public school system, they are political subdivisions of the State. In 2023, the Legislature amended the Charter Schools Law to require all new charters to include a union neutrality clause. This amendment was done to ensure that charter school teachers receive similar protections related to unionization as other public school teachers.

Plaintiffs are the Illinois Network of Charter Schools and two charter schools that have challenged the union neutrality clause, alleging that it is preempted by the National Labor Relations Act ("NLRA") and that it violates their First Amendment right to freedom and speech as well as the Fifth Amendment's takings clause. Plaintiffs have sued the Illinois Attorney General, Kwame Raoul, and the Illinois State Board of Education[1] ("ISBE") (collectively "the State Defendants") and the Board of Education for the City of Chicago. Plaintiffs have moved for a preliminary injunction on their NLRA preemption and First Amendment claims.

---

[1] ISBE is not a person subject to suit under 42 U.S.C. § 1983. However, because Plaintiffs could amend the complaint to properly name the superintendent of ISBE, ISBE joins this response.

1

However, Plaintiffs cannot satisfy the high standard necessary to warrant a preliminary injunction. First, Plaintiffs are unlikely to succeed on the merits of their claims. Plaintiffs are unlikely to succeed on their preemption claim because the NLRA does not apply to Illinois charter schools as political subdivisions of the State; they are instead governed by the IELRA. Alternatively, charter schools are exempt from the NLRA as government contractors. Plaintiffs are also unlikely to succeed on the merits of their First Amendment claim because as political subdivisions of the State, they cannot bring a First Amendment claim against the State. Moreover, any restrictions on state funding created by the union neutrality clause are constitutional. Finally, Plaintiff's claims against Attorney General Raoul and any claims under the Illinois constitution are barred by the Eleventh Amendment.

Second, Plaintiffs have not shown that they will be subject to irreparable harm if their motion for preliminary injunction is denied because Plaintiffs have not alleged that they will not receive funding or open for the academic year if their motion for preliminary injunction is denied. Finally, the balance of harms weighs heavily in favor of the State, as any injunction would directly interfere with the State's ability to enforce its own laws and regulate public schools. Because each factor in the preliminary injunction balancing test favors the State, Plaintiffs' motion for preliminary injunction must be denied.

## BACKGROUND

There are two statutes that are essential in understanding the relationship between charter schools and the State: the IELRA and the portion of the Charter Schools Law.

**The IELRA**

The Illinois Educational Labor Relations Act, 115 ILCS 5/1, *et seq.*, exists to "promote orderly and constructive relationships between all educational employees and their employers." 115 ILCS 5/1. In drafting the IELRA, the General Assembly recognized that "substantial

2

differences exist between educational employees and other public employees as a result of the uniqueness of the educational work calendar and educational work duties" and that "[u]nresolved disputes between the educational employees and their employers are injurious to the public." *Id.*

The IELRA defines educational employers (or employers) in part as "the governing body of a public school district, including the governing body of a charter school established under Article 27A of the School Code," *i.e.*, the Charter Schools Law. *Id.* at 5/2. The IELRA is administered through the Illinois Educational Labor Relations Board.

**The Charter Schools Law**

The Charter Schools Law, 105 ILCS 5/27A-1, *et seq.*, is the statutory mechanism that allows for and dictates the operation of charter schools in Illinois. In enacting the Charter Schools Law, the General Assembly recognized that "[t]he enactment of legislation authorizing charter schools to operate in Illinois will promote new options *within the public school system* and will provide pupils, educators, community members, and parents with the stimulus to stive for educational excellence." 105 ILCS 5/27A-2(a)(3) (emphasis added). The Charter Schools Law unambiguously states that it was the intent of the Legislature for charter schools to be a part of the public school system in Illinois. *Id.* at (c) (stating that the General Assembly intended to create "create new, innovative, and more flexible ways of educating children within the public school system" and "create opportunities within the public school system").

The relationship between charter schools and the State does not end there. Charter schools are publicly funded. 105 ILCS 5/27A-11. The Charter Schools Law clearly states that all charter schools must comply with the IELRA. 105 ILCS 5/27A-5(g). The governing body of a charter school is subject to the Freedom of Information Act and Open Meetings Act. *Id.* at (c). Because charter schools must be held accountable for the use of public funds, charter schools are required to submit audits and, at times, other financial statements. *Id.* at (f). The governing board of a charter

3

school is subject to governmental oversight because the board ultimately must satisfy certain conditions set by the authorizer to maintain its charter. 105 ILCS 5/27A-9(c) (listing when a charter may be revoked or not renewed by the local school board or ISBE). Moreover, while charter schools are exempt from certain state laws governing public schools, they are not exempt from a significant number of Illinois statutes and/or provisions of the Illinois School Code. *Id.* at (g)(1)-(36). Notably, charter schools are not exempt from the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*

**Legislative History: The IELRA, the Charter Schools Law, and the Act**

The Legislature's intent that charter schools be part of the public school system in Illinois is clear from the plain language of the IELRA and the Charter Schools Law. However, it is also significant to note that when the Illinois Appellate Court held that the IELRA did not apply to charter schools, *see Northern Kane Educ. Corp. v. Cambridge Lakes Educ. Ass'n*, 394 Ill. App. 3d 755, 760-761 (4th Dist. 2009), the General Assembly promptly passed Public Act 96-104 (effective January 1, 2010). Public Act 96-104 amended the Charter Schools Law to explicitly state that the IELRA applies to charter schools. *See* 105 ILCS 5/27A-5(g). This prompt response to the *Northern Kane* decision makes the Legislature's intent to include charter schools in the public school system clear.

Public Act 103-0416 (the "Act") is the General Assembly's latest step to ensure that charter school teachers are provided with similar measures and protections available to teachers in traditional public schools under the IELRA. Dkt. 1 ¶ 12. As Representative Guzzardi, one of the sponsors of the Act, explained, the Act was "simply seeking to extend similar [IELRA] provisions to teachers at charter schools." *Id*. The Act requires that any renewal of a certified charter include a "union neutrality clause" in any renewal of a certified charter. 105 ILCS 5/27A-6(c-10). The union neutrality clause provides that the charter school agrees:

4

> To be neutral regarding the unionization of any of its employees, such that the charter school will not at any time express a position on the matter of whether its employees will be unionized and such that the charter school will not threaten, intimidate, discriminate against, retaliate against, or take any adverse action against any employees based on their decision to support or oppose union representation.

105 ILCS 5/27A-3.

## ARGUMENT

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020).

A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020), *quoting Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008)). If the plaintiff satisfies all these requirements, then the court must weigh the harm that the plaintiff will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This analysis is done on a "sliding scale"— if the plaintiffs are less likely to win on the merits, the balance of harms must weigh more heavily in their favor, and vice versa. The court should pay "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Here, Plaintiffs cannot meet the high bar set for issuing a preliminary injunction.

5

## I.     Plaintiffs have no likelihood of success on the merits.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. A plaintiff must make a "strong" showing that he will succeed on the merits, meaning he must demonstrate how he proposes to prove the key elements of the case. *Illinois Republican Party*, 973 F.3d at 762 (noting that "the 'better than negligible' standard was retired by the Supreme Court"). Even if a plaintiff makes the required showing, the court must determine how likely it is that the plaintiff actually will succeed: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). Moreover, when there are "two equally credible versions of the facts the court should be highly cautious in granting an injunction without the benefit of a full trial." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) (citation omitted).

Here, Plaintiffs fail to establish a likelihood of success on the merits of their claims because the Act is not preempted by the NLRA, nor does it violate the First Amendment. Moreover, the Eleventh Amendment bars Plaintiffs' Illinois constitutional claims and Plaintiffs cannot maintain any claim against the Attorney General.

### A.     The Act is not preempted by the NLRA because Illinois charter schools are political subdivisions of the State, or, in the alternative, are state contractors.

The starting premise of Plaintiffs' preemption argument is that Illinois charter schools are regulated by the NLRA. *See* Dkt. 19 at 9-11. That is incorrect for two separate reasons: Charter schools are political subdivisions of the State, not private entities, and so the NLRA does not apply; and, in the alternative, charter schools are state contractors, such that the State does not violate the

6

NLRA when it imposes contractual conditions on their duties. Under either understanding of Illinois charter schools, Plaintiffs' preemption claim fails.[2]

**1. Illinois charter schools are subdivisions of the State and are not governed by the NLRA.**

Plaintiffs' preemption claim rests on the premise that Illinois charter schools are regulated by the NLRA. Dkt. 19 at 9-11. But the NLRA regulates only the conduct of certain private-sector "employers," 29 U.S.C. § 158(a) (setting out practices that an "employer" may not perform), and it defines "employer" to exclude "any State or political subdivision thereof," *id.* § 152(2). The NLRA thus does not regulate States or their subdivisions. Here, Illinois charter schools are part of Illinois' public school system, not private employers, whether that question is analyzed under the NLRA's traditional construction of the term "political subdivision" or by reference to state law.

**a. State law expressly provides that Illinois charter schools are part of the State.**

As discussed in detail in the Background section, the IELRA specifically states that it applies to charter schools, the Charter Schools Law clearly state that charter schools are public schools, and the legislative intent shows that the General Assembly intends for the IELRA to apply to Illinois charter schools. *See* 105 ILCS 5/27A-5(g), 115 ILCS 5/2. This inextricably intertwined relationship between the State of Illinois and its charter schools makes it clear that charter schools are political subdivisions of the State government.

Both the Illinois courts and the Seventh Circuit have recognized that charter schools are public schools. For example, the Illinois Appellate Courts recognize that Illinois charter schools are publicly funded public schools. The Illinois Appellate Court applied the statute of limitations

---

[2] Because the preemption standards that Plaintiffs describe are inapplicable here because of Illinois charter schools' unique status, State Defendants do not address Plaintiffs' specific arguments under the *Garmon* and *Machinists* lines of caselaw. *See* Dkt. 19 at 11-14. State Defendants reserve the right to contest Plaintiffs' arguments under these standards at a subsequent stage of the proceedings.

from the Illinois Governmental and Governmental Employees Tort Immunities Act to a charter school. *Urbina v. Noble Network of Charter Sch.*, 2019 IL App (1st) 181046-U, ¶1. In its analysis, the court noted that [c]harter schools are publicly funded." *Id.* at ¶30. The court also examined the relationship between charter schools and the State compared to other private, not-for-profit corporations that provide educational services. *Id.* The court distinguished charter schools from private not-for-profit corporations that offer educational services, noting that private schools, unlike charter schools, choose to enter into a contract with certain regulatory schemes and contractual requirements, whereas charter schools are bound to certain regulations under the Charter Schools Law even though they did not choose to be bound to the Charter Schools Law. *Id.* Further, the court in *Urbina* found that there is outside government control over the governing body of a charter school because charter schools are required to adhere to certain requirements and standards dictated by the authorizer. *Id.* at ¶¶32-33. Therefore, the court in *Urbina* held that charter schools "conduct public business." *Id.* at ¶30.

The Illinois appellate court made similar statements regarding the operations of a charter school in *Bd. of Educ. v. Ill. Charter Sch. Comm'n*, 2018 IL App (1st) 162084. There, the court noted that "[a] charter school is a tuition-free public school supported by public funds but operated by a nonprofit entity independent from the school district in which it operates." *Id.* at ¶5. Moreover, because charter schools must allow enrollment for any pupil who lives in the relevant geographic boundaries and use public funds, charter schools take funds away from the local public school district. *Id.* at ¶6. These cases show that when tasked with evaluating charter schools, the Illinois Appellate courts have found that they are fully enmeshed with the public school system.

Finally, the Seventh Circuit employed similar reasoning in *Graham v. Bd. of Educ.*, 8 F.4th 625, 629-30 (7th Cir. 2021). In *Graham*, the Seventh Circuit addressed whether a pension plan that included teachers from Chicago Public Schools as well as charter schools was a governmental

pension plan, and thus exempt from ERISA. *Graham*, 8 F.4th at 628. The Seventh Circuit held that the inclusion of charter school teachers in the pension plan did not render the pension plan non-governmental. *Id.* at 629-30. In reaching this decision, the Seventh Circuit explained that the major difference between a charter school and a public school is that charter schools have their own administration. *Id.* at 629. However, "[b]ecause the state not only funds the charter schools but also approves their establishment and continued existence, it is not appropriate to treat them as private institutions subject to public regulation." *Id.* Moreover, the court noted that the State's decision to include charter school teachers in its pension plan further indicates that charter schools are public schools. *Id.*

> **b.** **Plaintiffs' reliance on NLRB caselaw fails, both because that case law does not bind the Court and because Illinois charter schools are part of the State even under the NLRB's test.**

Plaintiffs' argument that the Act is preempted relies largely on the NLRB's broad view of its own jurisdiction and the NLRB's previous determinations that it has jurisdiction over other cases that involve charter schools. Dkt. 19 at 9-11. But that argument fails, because the NLRB interpretation of "political subdivision" is wrong and because, regardless, Illinois charter schools are political subdivisions even under the NLRB's test.

First, the NLRB caselaw that Plaintiffs cite, Dkt. 19 at 9-11 & n.1, rests on a test for defining "political subdivisions" that is too narrow. The NLRB decision on which Plaintiffs mainly rely, *Chicago Mathematics & Sci. Academy Charter Sch., Inc.* ("*Chicago Math. & Science*"), 359 N.L.R.B. 455 (2012), applied the NLRB's longstanding test for defining a "political subdivision," in which the Board considers an entity a "political subdivision" only if it was "(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate."

*NLRB v. Nat. Gas Util. Dist. of Hawkins Cnty.*, 402 U.S. 600, 604-05 (1971). *See Chicago Math. & Science*, 359 N.L.R.B. at 460 (applying this test).

But this test is too narrow and gives too short shrift to States' own understanding of what entities are part of the State, and the Court need not defer to it. To be sure, the Supreme Court in *Hawkins County* indicated that the NLRB's interpretation of this term is "entitled to great respect." *Hawkins*, 402 U.S. at 605. But that interpretation is no longer entitled to deference, now that the Supreme Court has overruled *Chevron, U.S.A. Inc., v. Nat. Res. Def. Council., Inc.*, 467 U.S. 837 (1984). *See Loper Bright Enters. v. Raimondo*, 219 L.Ed.2d 832, 845 (U.S. 2024). *Loper Bright* specifically rejected the notion that courts must give deference to an agency's interpretation of a statute and held that "agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Loper Bright*, 219 L.Ed.2d at 845 (emphasis in original). The Supreme Court went on to explain that the deference afforded to agency determinations by *Chevron* erred "because agencies have no special competence in resolving statutory ambiguities. Courts do." *Id.* at 859. Indeed, the Framers "anticipated that courts would often confront statutory ambiguities and expected that courts would resolve them by exercising independent legal judgment." *Id.* at 859-860. As such, courts should "interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Id.* at 861. In light of *Loper Bright*, Plaintiffs cannot rely on the NLRB's prior determinations about its jurisdiction over charter schools to carry the day. Instead, this Court must decide for itself whether the NLRA applies in this context.

With respect to the Board, the question whether an entity is part of a State for purposes of the NLRA is best answered by reference to state law. The NLRB's prior approach is problematic because it runs afoul of "principles of equity, comity, and federalism" and intrudes heavily on a state's interest in administering its affairs without federal intrusion. *See Rizzo v. Goode*, 423 U.S.

10

362, 379-80 (1976). The NLRB characterized the State's intent that charter schools be treated as public schools as "worthy of careful consideration," but "not controlling in ascertaining whether an entity is a political subdivision." *Chicago Math & Science*, 359 N.L.R.B. at 461. But treating the State's unambiguous intent as "not controlling" is the opposite of comity. That lack of comity is especially troubling given that charter schools help serve "the important public purpose of providing public education to children." *Id*. at 468 (Hayes, dissenting). For these reasons, the State Defendants respectfully assert that the NLRB's decision in *Chicago Math & Science* is wrong and that its reasoning should not be adopted by this Court. Instead, the Court should look to state law, which, as discussed, *supra* pp. 7-9, makes clear that Illinois charter schools are public schools, and so are "political subdivisions"—that is, part of the State—under the NLRA.

Regardless, the NLRB's decision was incorrect even under the NLRB's own test. Instead, the NLRB's Acting Regional Director was correct when he concluded that the charter school was a political subdivision of the State under both prongs of the *Hawkins County* test. 359 N.L.R.B. at 458. While the Acting Regional Director "recognized that CMSA is a privately incorporated entity with its own self appointed governing structure," he found that the charter school is created pursuant to "the State's 'enabling legislation,'" *i.e*., the Charter Schools Law; it "operates . . .. only through its charter agreement with" its authorizer; and it is "subject to statutory restrictions, regulations, and privileges that a private employer would not be subject to." *Id*. As the dissent explained, a nonprofit "cannot exist as a charter school unless it becomes a functioning subdivision of the public school system pursuant to the above-defined statutory and regulatory scheme." *Id*. at 467 (Hayes, dissenting). All of these factors "negate a finding that [the charter school] is a private employer." *Id*. at 458.

Finally, Plaintiffs also point to *Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770 (5th Cir. 2021), to support their argument that charter schools are subject to the NLRB. Dkt. 19 at

11

10-11, n. 1. *Voices* is distinguishable from this case because charter schools in Illinois are more directly integrated into the public school system than they were in Louisiana at the time of the *Voices* decision. For instance, in *Voices*, the Fifth Circuit noted that the charter school did not participate in the retirement plans available for teachers in Louisiana, did not have any political accountability, and was not subject to open meeting laws; indeed, the Louisiana Attorney General had specifically opined that charter schools were *not* political subdivisions of Louisiana. *Voices*, 905 F.3d at 772, 775-78. These factors are not present here. As discussed, charter schools in Illinois are fully encompassed within the public school system. Illinois charter schools are subject to the Freedom of Information Act and the Open Meetings Act, their teachers receive state pensions, and they are entitled to immunities that only apply to governmental entities. *See supra* pp. 2-5. It cannot be more clear that the General Assembly intends for charter schools to be a part of the public school system and governed by the IELRA. As such, Plaintiff's preemption claim fails because charter schools in Illinois are not subject to the NLRA.

> **2.      In the alternative, Illinois charter schools are government contractors, and the State may permissibly impose conditions on its contracts with them.**

As discussed above, Illinois charter schools are public schools, and so are part of the State, not private employers governed by the NLRA. In the alternative, however, the challenged statute is still not preempted, because a long line of federal case law recognizes that States can permissibly impose conditions on their own contracts that they could not impose in their regulatory capacity, and the challenged statute falls handily within this precedent.

The Supreme Court has long observed "the distinction," for purposes of NLRA preemption, "between government as regulator and government as proprietor." *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.* ("*Boston Harbor*"), 507 U.S. 218, 227 (1993). Although "the NLRA prevents a State from regulating within

a protected zone," the Court has explained, "[a] State does not regulate . . . simply by *acting* within one of these protected areas." *Id.* (emphasis added). "When a State owns and manages property, for example, it must interact with private participants in the marketplace," and "[i]n so doing, the State is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state *regulation.*" *Id.*

The Supreme Court and lower courts have consistently applied this principle to allow States to impose conditions on the performance of duties for the State that they could not impose in their capacity as regulator. In *Boston Harbor* itself, for instance, the Court held that the Commonwealth of Massachusetts could permissibly enter into a project labor agreement that required all private contractors on a $6.1 billion project to recognize and bargain with a designated union. *See id.* at 221-23. In *Hotel Employees & Restaurant Employees Union v. Sage Hospitality Resources, LLC*, 390 F.3d 206 (3d Cir. 2004), the Third Circuit held that the City of Pittsburgh could permissibly condition a grant of tax financing on grantees' acceptance of a labor neutrality agreement—much as the challenged statute does. *See id.* at 214-215. Scores of federal appellate opinions rest on the same rule. *See, e.g.*, *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1084 (9th Cir. 2017); *Michigan Bldg. & Const. Trades Council v. Snyder*, 729 F.3d 572, 580 (6th Cir. 2013); *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 188 (2d Cir. 2012); *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 35 (D.C. Cir. 2002); *Cardinal Towing & Auto Repair, Inc. v. City of Bedford* 180 F.3d 686, 692 (5th Cir. 1999).

The Seventh Circuit has also applied this rule, most notably in *Northern Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004 (7th Cir. 2005). *Lavin* concerned a state statute requiring certain recipients of state funding (developers of renewable-fuel plants) to enter into project labor agreements reflecting terms that, "as a practical matter," could be "achieved only by employers that recognize and bargain with labor unions." *Id*. at 1005. An association of

13

non-union contractors asserted that the state statute was preempted by the NLRA, but the Seventh Circuit disagreed, explaining that Illinois could permissibly impose such conditions on a project of its own funding without engaging in "regulation" under the NLRA. *Id.* at 1006-07. "Because Illinois has limited its condition to the project financed by the subsidy," the court explained, "it has not engaged in 'regulation'" under the NLRA, "and its conditions are not preempted by federal labor law." *Id.* at 1007; *accord, e.g.*, *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 634 (7th Cir. 1996) ("[L]ike a private company," state entities can "cho[o]se to contract only with those companies who [a]re wiling to sign collective bargaining agreements").

Here, even presuming that Illinois charter schools are private entities rather than political subdivisions of the State, the State's proprietary interest in "attempting to keep labor peace" (*id.*), in the provision of public education is at its apex, and easily justifies the imposition of the challenged condition on its contracts with charter schools. As discussed, *supra* pp. 2-9, Illinois charter schools are in all relevant respects indistinguishable from traditional public schools, fundamentally because they accept state funds to perform a state function (the education of Illinois children).

The State is, in turn, permitted to impose reasonable conditions on the receipt of those funds, to ensure that (among other things), as in *Boston Harbor*, its funds are not depleted by disputes between charter school management and unions over labor issues. *See* 507 U.S. at 221 (Massachusetts required contractors to enter into project labor agreements in order to "maintain worksite harmony, labor-management peace, and overall stability throughout the duration of the project."). Because the State made that decision in its proprietary capacity, rather than in its capacity as regulator of private industry, there is no conflict between the challenged statute and the NLRA. If the charter schools disagree with it, they are welcome to forego state funding and operate

14

solely as private schools. Otherwise, they are obliged to "respect the conditions," *Lavin*, 431 F.3d at 1006, imposed by the State on their use of public funds.

**B.      The Act does not violate Plaintiffs' First Amendment rights.**

**1.      Plaintiffs have not established that they have standing to bring their First Amendment claim.**

As an initial matter, Plaintiffs have not established that they have standing to assert their First Amendment claim. To establish standing for their First Amendment facial challenge, a plaintiff must show either that: (1) he intends to engage in a course of conduct that is affected by the challenged policy and that there is a credible threat that the policy will be enforced against him when he does; or (2) that there is a "chilling effect"; *i.e.*, that he self-censors because of an "objectively reasonable" fear of the policy being enforced against him. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638-39 (7th Cir. 2020) (plaintiffs did not face credible fear of having policy that allegedly violated the First Amendment applied against them). "For either that credible threat of enforcement or chilling effect to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.*, *quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A plaintiff "must substantiate a concrete and particularized chilling effect on his protected speech or expressive conduct to pursue prospective relief." *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012).

Plaintiffs have failed to establish standing under this standard. The affidavit submitted by the Montessori School of Englewood ("TMSOE") is particularly vague. TMSOE states only that it "regularly communicates with its employees about conditions at its schools, and the process by which policies are revised and implemented." Dkt. 22, Affidavit of Rita Nolan, at ¶ 12. It does not state that it has ever communicated with its employees about unionization or that it intends to do so in the future. *See generally id.* Intrinsic states that it has "specifically addressed the topic of unionization with its employees, board members, donors and stakeholders" in the past (Dkt. 23,

15

Affidavit of Timothy Ligue, at ¶ 11), but it does not identify any specific statements on that topic that it would like to make that it believes are proscribed by the statute, and so has not established a "concrete and particularized chilling effect on [its] protected speech." Finally, Illinois Network of Charter Schools ("INCS")'s statement that "[n]umerous of [its] members" are "particularly concerned about content-based restrictions on their freedom of speech" (Dkt. 20, Affidavit of Andrew Broy) fails to establish that INCS's *own* speech is likely to be affected by the statute, and its allegations about its members are too vague and unsubstantiated to give rise to standing, especially given TMSOE and Intrinsic's own refusal to identify specific statements that they think will be affected by the statute. Because none of the Plaintiffs have established that their speech on unionization has been chilled, Plaintiffs lack standing to bring their facial First Amendment claim.

### 2. As political subdivisions of the State, Plaintiffs cannot bring a First Amendment claim against the State.

Even if Plaintiffs had standing to bring their First Amendment claim, they are unlikely to succeed on the merits. Charter schools are political subdivisions of the State. *See supra* pp. 9-11. Section IA. As such, charter schools cannot sue the State for alleged constitutional violations. *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009). This is because "a political subdivision, 'created by a state for the better order of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *Ysursa*, 555 U.S. at 363, *quoting Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933).

The Ninth Circuit applied this principle to a claim brought by a charter school in Idaho in *Nampa Classical Acad. v. Goesling*, 447 Fed. Appx. 776, 778 (9th Cir. 2011). *Nampa* involved a First Amendment claim brought by a charter school challenging Idaho's prohibition on denominational texts in public schools. *Id.* at 777. The Ninth Circuit rejected that argument, relying in part on *Ysursa*, holding that "[w]hile [Nampa Classical Academy] itself is a private non-profit

16

corporation, Idaho law contains numerous provisions that, when taken as a whole, demonstrate that Idaho charter schools are governmental entities." *Id.* As such, "[l]ike other political subdivisions, Idaho charter schools are creatures of Idaho state law that are funded by the state, subject to the supervision and control of the state, and exist at the state's mercy. [Nampa Classical Academy] is therefore a governmental entity incapable of brining an action against the state." *Id.* at 778. Here, as in *Nampa*, charter schools are political subdivisions that cannot sue the State. As such, Plaintiffs' First Amendment claim fails.

### 3. Even if Plaintiffs could bring a First Amendment claim, they are unlikely to succeed because the union neutrality clause is an acceptable condition on state funding.

As already discussed, it is generally accepted that the government can place conditions on programs that it funds. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) ("As a general matter, if a party objects to a condition on the receipt of [] funding, its recourse is to decline the funds."). However, the scope of acceptable conditions is more nuanced in the First Amendment context. *See Agency for Int'l Dev.*, 570 U.S. at 214. To determine if a condition violates the recipient's First Amendment rights, the courts must draw distinctions between "conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214-25.

In *Agency for Int'l Dev.*, the Supreme Court looked to congressional funding that would require funding for HIV/AIDS treatment and prevention to go only to organizations that: (1) did not promote prostitution or sex trafficking, *and* (2) that had an express policy explicitly opposing the legalization of prostitution or sex trafficking. *Id.* at 210 (emphasis added). In addressing this second requirement, the Court explained that, to determine if a condition violates the recipient's First Amendment rights, courts must draw distinctions between "conditions that define the limits

17

of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214-25. The Supreme Court agreed that the government could require recipients not to promote prostitution or sex trafficking. *Id.* at 208. Ultimately, though, the Supreme Court found that requiring a recipient of the funding to have its own statement against sex work extended beyond the realm of "defining the limits of the federally funded program." *Id.* at 219. This is because requiring a recipient to adopt the government's view of prostitution and sex trafficking as its own inherently infringed on protected speech outside of the scope of the program. *Id.*

This same rationale applies here. Under this analysis, the union neutrality clause does not violate the First Amendment because the union neutrality clause falls squarely within the scope of the State's goals for the charter school program. As outlined in Plaintiffs' motion for preliminary injunction, the union neutrality clause was implemented to allow charter school teachers to make decisions about unionization without undue influence from their employers or fear of retaliation. Dkt. 19 at 5.

Here, Plaintiffs are not being required to adopt any specific speech; they are only required to refrain from speaking on the issue of unionization. This requirement aligns with the goals of the charter school program, which is to allow innovative teaching methods and curriculums in the public schools while still holding the charter schools and their administrations to certain standards (including the IELRA) and providing certain public school benefits to charter school teachers. Here, the specific goal is to ensure that charter school teachers receive similar protections regarding unionization that other public school teachers receive under the IERLA. *Id.*

The fact that Plaintiffs may wish to speak about unionization does not mean that they are entitled to public funding to do so. *See Camelot Banquet Rooms, Inc. v. United States SBA*, 24

18

F.4th 640, 644 (7th Cir. 2022) (holding that certain the COVID-19 Paycheck Protection Program could exclude certain adult entertainment businesses). This is because "the government is not required to subsidize activity simply because the activity is protected by the First Amendment." *Id.* at 646, *citing Ysursa*, 555 U.S. at 358-59. Instead, a state can "selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." *Id.*, *quoting Rust v. Sullivan*, 500 U.S. 173, 193 (1991). If Plaintiffs do not want to include the union neutrality clause, they could refuse the charter, and public funding, and decide to operate as private schools. Conversely, if Plaintiffs do want to operate as charter schools, the State can require that their respective charters include the union neutrality clause as a condition of the receipt of public funds without violating the First Amendment. Therefore, Plaintiffs are unlikely to succeed on the merits of their First Amendment claim.

## C. Plaintiffs' claims under the Illinois Constitution are barred under the Eleventh Amendment.

Finally, Plaintiffs have no chance of success on their free speech claim under the Illinois Constitution (alleged in Count II[3]) because that claim are barred by the Eleventh Amendment. The Eleventh Amendment bars federal courts from hearing state-law claims against state officials named in their official capacities, regardless of the relief sought. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Lukaszczyk v. Cook Cty.*, 47 F.4th 587, 604 (7th Cir. 2022). Applying this logic, the federal courts have routinely held that claims based on the Illinois Constitution are barred by

---

[3] While Plaintiffs have not moved for a preliminary injunction based on their Count III takings claim, this claim is likewise barred by the Eleventh Amendment.

the Eleventh Amendment. *See, e.g.*, *Cook Cty. Republican Party v. Pritzker*, 487 F. Supp. 3d 705, 715 (N.D. Ill. 2020) ("Plaintiff's state-law claims arising from alleged violations of the Illinois Constitution have no likelihood of success on the merits because such claims are barred by the Eleventh Amendment."); *Travis v. Illinois Dep't of Corr.*, No. 18 C 00282, 2019 WL 2576546, at *3 (N.D. Ill. June 24, 2019) ("Therefore, neither the Department nor the State may be sued for violations of the Illinois Constitution in federal court."). Thus, Plaintiffs have no chance of success on these state-law claims.

### D. The Eleventh Amendment bars Plaintiffs' claims against the Attorney General.

Nor can Plaintiffs succeed in bringing any claims against the Attorney General. An official-capacity suit is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). While the Eleventh Amendment bars claims against the State (*see Pennhurst State School & Hosp.*, 465 U.S. at 100), parties may sue state officers to enjoin the enforcement of allegedly unconstitutional acts. *See Ex Parte Young*, 209 U.S. 123, 155-57 (1908). But to fall under this exception, "a plaintiff must show that the named state official plays some role in enforcing the statute in order to avoid the Eleventh Amendment." *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2019), *citing Ex Parte Young*, 209 U.S. at 157. The

Here, Plaintiffs allege that the Attorney General is "responsible for the enforcement of state laws, including the Act." Dkt. 1 ¶ 50. Plaintiffs further note that the Attorney General "has the statutory duty to . . . 'investigate alleged violations of the statutes which the Attorney General has a duty to enforce.'" *Id*. (quoting 15 ILCS 205/4). But neither the Act nor the Charter Schools Law assigns any specific role to the Attorney General. *See* 105 ILCS 5/Art. 27A. Thus, the Attorney General has no duties related to enforcement of the Act outside of his general duties to enforce the laws of the state, but the general duty to enforce the laws is insufficient to sustain a claim against

the Attorney General. *Doe*, 833 F.3d at 976 (explaining that the duty to support the constitutionality of statutes does not overcome the Eleventh Amendment); *Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992) ("Plaintiffs apparently named the office of the Attorney General in an effort to obtain a judgment binding the State of Illinois as an entity, a step that Congress did not authorize when enacting 42 U.S.C. § 1983 and that the eleventh amendment does not permit in the absence of such authorization.").[4]

Plaintiffs also alleges that part of Attorney General Raoul's duties includes "institut[ing] and prosecut[ing] all actions and proceedings in favor of or for the use of the State." Dkt. 1 ¶ 50. Even with this additional allegation, Plaintiffs' claims against Attorney General Raoul still fail. It is unclear what sort of action or proceeding the Attorney General might institute to enforce the Act, but in any case the Attorney General has not threatened to enforce the Act against the Plaintiffs. *See generally* Dkt. 1. "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996); *see also Doe*, 883 F.3d at 977. Because the Attorney General has not threatened to do anything to enforce the Act, Plaintiffs' claim against the Attorney General is barred by the Eleventh Amendment.

## II. The other preliminary injunction factors weigh against granting a preliminary injunction.

As discussed above, Plaintiffs fail to establish a likelihood of success on the merits of their claims. Because Plaintiffs have little chance of success on the merits, the balance of harms must

---

[4] *See also Ruiz v. Pritzker*, No. 22-cv-07171, 2024 U.S. Dist. LEXIS 53683, at *10 (N.D. Ill. Mar. 26, 2024) (dismissing claims against the Attorney General where the challenged statute did not "contain[] an enforcement provision or penalty clause that implicated the attorney general's power to enforce" the statute); *Heabler v. Madigan*, No. 12-cv-6193, 2013 U.S. Dist. LEXIS 136986, *11 (N.D. (Ill. Sep. 24, 2013) (dismissing claim against attorney general and noting that the "general authority over Illinois law thus does not alone render [him] a proper defendant here"); *Sierakowski v. Ryan*, No. 98-cv-7088, 1999 U.S. Dist. LEXIS 6573, *4 (N.D. Ill. Apr. 26, 1999) (same).

weigh very heavily in their favor. However, as discussed below, the balance of harms weighs strongly *against* granting a preliminary injunction.

> ### A.      Plaintiffs cannot demonstrate irreparable harm.

Plaintiffs have also failed to establish that they will suffer irreparable harm if the Court denies their motion. Plaintiffs merely allege that any infringement on their constitutional rights automatically constitutes irreparable harm. Dkt. 19 at 18. And as the Third Circuit has recently explained, a presumption of irreparable harm "is the exception, not the rule." *Del. State Sportmen's Ass'n. Inc. v. Del. Dept' of Safety & Homeland Sec.*, Nos. 23-1633, 23-1634 & 23-1641, __ F.4th __, 2024 U.S. App. LEXIS 17214, at *19 (3rd Cir. 2024). This presumption generally only applies in First Amendment cases (id. at *21-22), as Plaintiffs' cases show. *See* Dkt. 19 at 18-19 (citing multiple cases involving First Amendment claims).[5] Thus, Plaintiffs are not entitled to any presumption of irreparable harm regarding their preemption claim. And even for their First Amendment claim, Plaintiffs have failed to show that their constitutional rights have been violated, and it is well established that the *possibility* of irreparable harm is not sufficient to warrant a preliminary injunction. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020).

Even if the Plaintiffs could establish irreparable harm, "the threat of irreparable harm does not automatically trigger a preliminary injunction." *Del. State Sportmen's Ass'n. Inc.*, 2024 U.S. App. LEXIS 17214, at *14. The purpose of a preliminary injunction is not to prevent interim harm, but to prevent irreparable harm that "threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable final judgment might well be useless.'" Where the "plaintiff's alleged injury does not

---

[5] Plaintiffs also cite a Second Circuit case presuming irreparable harm in an Eighth Amendment claim, *see* Dkt. 19 at 18, *citing Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984). But while the Second Circuit has "presumed harm in various settings" (*Del. State Sportmen's Ass'n. Inc.*, 2024 U.S. App. LEXIS 17214, at *20), that is not the general rule.

threaten to moot the case" the "wiser course" is "often, perhaps usually," the denial of a preliminary injunction. *Id*. at \*15. Here, Plaintiffs have not alleged that this case will become moot if the Court denies a preliminary injunction. And while Plaintiffs make vague allegations that their funding would be "threaten[ed]" if they did not sign the renewal charter agreement before June 30, 2024 (Dkt. 19 at 19), that deadline has come and gone. Plaintiffs have submitted no evidence that their funding is imperiled by their refusal to sign the renewal charter agreement.

Indeed, Plaintiffs' lengthy delay in moving for a preliminary injunction "undercuts [its] claims of irreparable harm" and "may be considered as circumstantial evidence that the potential harm to [Plaintiff] is not irreparable or as great as claimed." *Fenje v. Feld*, No. 01 C 9684, 2002 U.S. Dist. LEXIS 9492, at \*6 (N.D. Ill. May 28, 2002*). See also Preston v. Bd. of Trs. of Chi. State Univ.*, 120 F. Supp. 3d 801, 806 (N.D. Ill. 2015) (delay in First Amendment case "undermines the severity of these purported harms"); *Del. State Sportmen's Ass'n. Inc.*, 2024 U.S. App. LEXIS 17214, at \*25-26 ("Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.") (quotations omitted).

The Act was passed by both Houses on May 10, 2023, was signed by the Governor on August 4, 2023,[6] and became effective that same day (Dkt. 1 ¶ 8), more than ten months before Plaintiffs filed the present motion for a preliminary injunction. Nothing prevented Plaintiffs from filing this lawsuit and moving for injunctive relief nearly a year ago.[7] Instead, Plaintiffs waited until just days before the June 30, 2024 deadline to sign the renewal charter agreement before

---

[6] *See* "Bill Status of HB1120," available at https://www.ilga.gov/legislation/billstatus.asp?DocNum=1120 &GAID=17&GA=103&DocTypeID=HB&LegID=143135&SessionID=112&SpecSess= (last visited July 15, 2024).

[7] Indeed, Plaintiffs were well-aware of the challenged law; multiple individuals from Illinois Network of Charter Schools (sometimes abbreviated "INCS") and Intrinsic appeared at hearings on the Act prior to its passage. See "Witness Slips for HB1120: Opponents," available at https://www.ilga.gov/legislation/ Witnessslip.asp?LegDocId=179676&DocNum=1120&DocTypeID=HB&LegID=143135&GAID=17&Se ssionID=112&GA=103&SpecSess=&Session=&WSType=OPP (last visited July 15, 2024).

filing their motion. Dkt. 19 at 19. Given that the Plaintiffs did not feel it was necessary to promptly challenge the Act to prevent the alleged irreparable harm, it would be "inconsistent with the [Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" to grant Plaintiffs' request. *Winter*, 555 U.S. at 22. Plaintiffs have failed to demonstrate irreparable harm.

**B.      The balance of harms weighs decidedly against injunctive relief.**

Under the "balance of harms" portion of the analysis, Plaintiffs must establish that "the harm they would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011). As Plaintiffs' claims are unlikely to succeed on their merits, Plaintiff "must compensate for the lesser likelihood of prevailing by showing the balance of harms tips *decidedly* in favor of the movant." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 826 n. 5 (7th Cir. 1998) (emphasis in original). The court also should consider whether a preliminary injunction would cause harm to the public interest. *Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998). When the government is the opposing party, the final two factors in the preliminary injunction analysis—the balance of the equities and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("The government's interest *is* the public interest.") (emphasis in original).

Here, the State has a strong interest "providing charter school teachers with the same measures and protections available to teachers in traditional public schools" under the IELRA. Dkt. 1 ¶ 12.  As discussed above, the General Assembly has consistently worked to provide these protections to charter school teachers by revising the Charter Schools Law and the IELRA.  Charter

24

schools are a creation of state law supported by state funding, and the State's interest in ensuring labor peace in public schools would be thwarted if the Court were to enjoin the Act.

Moreover, the State has a strong interest in enforcing its own democratically enacted laws. *Del. State Sportmen's Ass'n. Inc.*, 2024 U.S. App. LEXIS 17214, at \*25. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotations omitted). "Without the clarity of a full trial on the merits," the Court should "err on the side of respecting state sovereignty." *Del. State Sportmen's Ass'n. Inc.*, 2024 U.S. App. LEXIS 17214, at \*25. Even after a trial, a federal court should issue injunctions against the State only "sparingly." *Rizzo*, 423 U.S. at 378. This strong preference against such intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships" (*id*. at 380 (quotation omitted)), which are premised on "the principles of equity, comity, and federalism." *Id*. at 379 (quotation omitted). The State's interests in labor peace and in enforcing its own laws far outweighs the Plaintiffs' vague, speculative irreparable injuries. The preliminary injunction should be denied for this reason as well.

### C. No injunction should be entered against the Attorney General.

Finally, even if the Court were to enter a preliminary injunction in this matter, it should not be entered against the Attorney General. As discussed above, Attorney General Raoul is not a proper defendant for a challenge to the Act because he has no role in enforcing it. For the same reason, it is not appropriate to enter an injunction against the Attorney General. Although it is not entirely clear, Plaintiffs are apparently seeking an order from the Court allowing them to sign renewal charter agreements that do not include the union neutrality clause. *See* Dkt. 6 ¶ 5. But the Attorney General is not responsible for authorizing, approving, or signing the charter school agreements—that power belongs to authorizers under the Charter Schools Law. See Dkt. 1 ¶¶ 62-

63; Dkt. 19 at 19 (referring to "Defendant CPS and ISBE's attempts to enforce the Act"). Indeed, at no point do Plaintiffs allege that the Attorney General has this power; they only allege that he was named as a defendant because he is generally tasked with enforcing the laws of the State. Dkt. 1 ¶ 50.

Accordingly, an injunction against the Attorney General is neither necessary nor appropriate in this case. Therefore, even if the Court enters a preliminary injunction in this case, the Attorney General respectfully requests that the injunction only be applied to the parties that the Charter Schools Law empowers to determine whether a charter school's agreement is renewed.

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

/s/
Mary Johnston
Maggie Jones
Sarah H. Newman
Assistant Attorneys General
Office of the Illinois Attorney General
Government Representation Division
115 South LaSalle Street
Chicago, Illinois 60603
312-814-4417
mary.johnston@ilag.gov
margaret.jones@ilag.gov
sarah.newman@ilag.gov

*Counsel for Attorney General Kwame Raoul
and the Illinois State Board of Education*

26