UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS NETWORK OF CHARTER SCHOOLS, INTRINSIC SCHOOLS, and THE MONTESSORI NETWORK D/B/A THE MONTESSORI SCHOOL OF ENGLEWOOD, NAMASTE CHARTER SCHOOL, INC., CHICAGO CHARTER SCHOOL FOUNDATION D/B/A CHICAGO INTERNATIONAL CHARTER SCHOOL, NOBLE NETWORK OF CHARTER SCHOOLS, GREAT LAKES ACADEMY CHARTER SCHOOL, PERSPECTIVES CHARTER SCHOOL, CATALYST SCHOOLS, ERIE ELEMENTARY CHARTER SCHOOL, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:24-cv-05057<br><br>Hon. John Robert Blakey<br><br>Hon. Magistrate Heather K. McShain |
| Plaintiffs, ) | |
| v. ) | |
| KWAME RAOUL in his official capacity as the Attorney General for the State of Illinois, The BOARD OF EDUCATION OF THE CITY OF CHICAGO, the ILLINOIS STATE BOARD OF EDUCATION, ) ) ) ) ) ) | |
| Defendants. ) | |

**CHICAGO TEACHERS UNION'S MOTION TO INTERVENE**

Pursuant to Fed. R. Civ. Pro 24(a)(2) and 24(b)(1)(B), the Chicago Teachers Union respectfully requests to intervene in this action as a matter of right, and by permission, as a party defendant. Plaintiffs initiated this action in 2024 solely to challenge an Illinois state law, Public Act 103-0416 governing statewide charter school labor relations. However, plaintiffs amended their complaint on January 20, 2026 to seek relief with respect to a Resolution independently

1

adopted in 2025 by the Chicago Board of Education ("CBE") that pertains to educator organizing rights solely in Chicago charter schools authorized and renewed by the CBE (the "CBE Resolution"). The Chicago Teachers Union ("CTU") has a direct interest as an organization, and an associational interest on behalf of its members, in the outcome of this proceeding as it relates to the CBE Resolution and accordingly seeks to intervene in this action.

The CTU exists for the purpose of representing and collectively bargaining on behalf of educators in the Chicago Public Schools ("CPS"), including CPS charter schools, and improving the educational experience of CPS students. The CTU is the exclusive collective bargaining representative for certain educators employed at Plaintiff Namaste Schools (Am. Comp., ¶ 58). The CTU also represents educators at thirteen charter schools in Chicago (Am. Comp., ¶ 16). Since 2018, the CTU has actively sought representation rights at numerous CPS charter schools located in Chicago and continues to seek representation rights today.

The CBE Resolution now targeted in Plaintiffs' amended complaint contains a number of requirements for charter school accountability and transparency. It also includes requirements by charter schools to remain neutral regarding unionization of its employees, allow labor organizations access to their premises, provide information to labor organizations pertaining to their employees, recognize labor organizations demonstrating majority support by card check, and submitting disputes to binding arbitration, among other things (Am. Comp., ¶ 10). A copy of the CBE May 29, 2025 Resolution is attached as Exhibit 1 and the record of the CBE vote is attached as Exhibit 2. [1]

---

[1] CBE Resolution 25-0529-RS7 is published on the CBE website at www.cpsboe.org/meetings/board-actions/4403, and the record of the May 29, 2025 CBE Board vote to adopt the CBE Resolution is published at www.cpsboe.org/content/documents/may_2025_vote_talley.pdf.

Plaintiffs mischaracterize the CBE Resolution as resulting from and required under the disputed State law. They falsely claim that the CBE Resolution is "in furtherance of its compliance with the [State] Act." (Am. Comp., ¶ 10). Plaintiffs now seek an injunction to prevent enforcement of the CBE Resolution, falsely asserting that the CBE resolution implements State law. (Am. Comp., Prayer for Relief, par. 1). In fact, the CBE Resolution makes no reference whatsoever to state law and was promulgated independently of any requirements under state law.[2]

The relief sought by plaintiffs in this action would directly affect the CTU's rights, and its members' rights, to seek and secure representation rights for CPS charter school educators as their exclusive collective bargaining representative and to increase the density of union representation in Chicago charter schools. The CTU's interests aren't adequately represented by other parties to this action.

Intervention by Right

The CTU satisfies the four requirements under Fed. R. Civ. Pro. 24(a)(2) for intervention by right: (1) the motion to intervene must be timely; (2) the party seeking to intervene must

---

[2] The CBE Resolution (Exhibit 1) contains prefatory language of its intent:

> WHEREAS, the Board intends to ensure the uninterrupted provision of educational services to school-aged public school students by operators of charter schools in the City of Chicago; and
>
> WHEREAS, the charter school opposition to employee organizing, when conducted in bad faith or through unlawful means, may result in costly legal bills and inappropriate use of taxpayer funds;
>
> WHEREAS, the Board seeks to comply with its collective bargaining agreement with the Chicago Teachers Union requiring charter operators to exercise union neutrality.

claim an interest related to the property or transaction which is the subject of the action; (3) the party seeking to intervene must be so situated that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) the existing parties must not be adequate representatives of the applicant's interest. *Google, Inc. v. Cent. Mfg.*, 2009 U.S. Dist. LEXIS 72507 at *5-6 (N.D. Ill. 2009). The CTU's motion should not be dismissed "unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). The Courts "construe Rule 24(a)(2) liberally and 'resolve doubts in favor of allowing intervention.'" *Mich. v. U.S. Army Corps of Eng'rs*, 2010 U.S. Dist. LEXIS 85821, 2010 WL 3324698 at *2 (N.D. Ill. 2010) (citation omitted); *Am. Airlines, Inc. v. City of Chicago*, 2025 U.S. Dist. LEXIS 131089 at *5 (N.D. Ill. 2025).

    1.    <u>Timely Motion</u>

The CTU has wasted no time in filing this motion. Plaintiffs amended their complaint on January 20, 2026 to seek relief pertaining to the 2025 CBE Resolution, and no responsive pleadings have been filed by any defendant. This motion is clearly timely. *See*, *Illinois v City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019); *Cook County v Mayorkas*, 340 F.R.D. 35 at *43 (N.D. Ill. 2021).

    2.    <u>Direct, significant and legally protectable interest</u>

The CTU's interest here is direct, significant and legally protectable. *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989). The inquiry here focuses "on the issues to be resolved by the litigation and whether the potential intervener has an interest in those issues." *Id.*, at 147; *Google, Inc. v. Cent. Mfg.*,, 2009 U.S. Dist. LEXIS 72507 at *5-6 (N.D. Ill. 2009).

4

The CTU has two interests that warrant its intervention in this action. Should the CBE Resolution be enjoined, the CTU would have to spend significant resources and have more difficulty in seeking and obtaining representation rights for Chicago charter school educators. Charter school operators could directly intervene in the decisions by its educators whether or not to choose representation, rather than remaining neutral. The CTU could not readily identify the educators at charter schools nor have access to them while they are present at the school. The CTU would not necessarily achieve recognition rights by providing cards demonstrating majority support, and it would lose access to binding decisions from arbitrators to resolve representation disputes rather than lengthy administrative or court proceedings. The CTU further has an associational interest on behalf of its charter school members. As more charter school educators have representation rights, the terms and conditions of employment for represented charter educators can improve because they gain commensurate strength in bargaining power.

The Seventh Circuit has explained that an intervenor's interest must be "unique." *Haymarket Dupage, LLC v. Vill. of Itasca*, 2025 U.S. Dist. LEXIS 60493 at *6 (N.D. Ill. 2025); *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686-87. But as the Court in *Bost* explained,

> [W]e have never required a right that belongs only to the proposed intervenor, or even a right that belongs to the proposed intervenor and not to the existing party. Properly understood, the "unique" interest requirement demands only that an interest belong to the would-be intervenor in its own right, rather than derived from the rights of an existing party.

*Id.*, at 687. Here, the CTU's interests in gaining representational rights for charter school educators is unique to the CTU and its members. None of the other defendants share the CTU's interest in serving as collective bargaining representatives. To the contrary, defendant CBE seeks only to manage the operation of charter schools, minimize disruptive and costly conflicts that may arise in the course of educator

5

representation drives, and implement a commitment negotiated into its collectively bargained agreement. And the State defendants have no direct interest in the CBE resolution. The CTU's rights here are its own and not derived from the rights of other parties. They are directly and significantly affected by the outcome of this litigation.

3. <u>Impairment of the CTU's interests</u>

Impairment of a nonparty's interest exists where resolution of the "legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982); *Am. Airlines, Inc. v. City of Chicago*, 2025 U.S. Dist. LEXIS 131089 at *11 (N.D. Ill. 2025).

Should plaintiffs succeed in enjoining enforcement of the CBE Resolution, the CTU's interests are directly impaired and there would likely be no alternative means by which it could litigate its rights under the CBE Resolution.

4. <u>Existing parties not adequate representatives</u>

Because there is no notable relationship between the CTU and the other defendants, the CTU must satisfy the default rule and meet the "minimal burden" of showing that representation of its interests "may be" inadequate. *Am. Airlines, Inc. v. City of Chicago*, 2025 U.S. Dist. LEXIS 131089 at *12 (N.D. Ill. 2025); *Bost*, 75 F.4th at 688-89.

The CTU has no relationship with the State defendants, and its relationship with the CBE is best characterized as adversarial, given the CTU's role as the collective bargaining agent for educators sitting on the opposite side of the bargaining table than the CBE and periodically

6

engaging in strikes to further its representational interests. As mentioned above, the CBE's interest here is to avoid conflicts between charter operators and labor organizations, and to implement terms negotiated by the CTU into its collective bargaining agreement, but not to further the CTU's institutional and organizing interests.

The intermediate standard under this criterion applies where "the prospective intervenor and the named party have the same goal." *Bost*, 75 F.4th at 688. But comparing the interest of a would-be intervenor to an existing party, "the same goal" applies "only where the interests are genuinely 'identical.' Otherwise, we apply our lenient default rule." *Id.* Were the intermediate standard to apply, the CTU can demonstrate "inadequate representation by pointing to 'some conflict' between itself and the existing party." *Id.*

Again, the relationship between the CTU and CBE are inherently adversarial as between management and labor, and the CBE's stated reasons for the Resolution are to avoid the expense and disruption engendered from union organizational activities and implement collectively bargained terms. The CBE's interests do not include the CTU's membership growth or bargaining power. *Id.,* at 689. As in *Bost*, a regulatory body's interest are to the general public, not to a private organization's membership. The requirement to include a union neutrality clause into charter renewal agreements negotiated into the CTU-CBE labor contract does not eliminate all conflicts between the Union, which represents educators, and the CBE, which manages the Chicago Public Schools. Should the neutrality provisions of the CBE Resolution be enjoined, the impact on the CBE is limited, but the impact on the CTU is significant. They do not share "genuinely identical" interests.

7

Intervention by Permission

This Court may also grant intervenor status to the CTU under Fed. R. Civ. Pro. 24(b)(1)(B), allowing anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."

This determination is within the Court's sound discretion, and granting the motion will not cause undue delay or prejudice to the original parties. *Bost*, 75 F.4th at 690-91. The CTU's interests are directly at stake in the litigation and are distinct from those of the other defendants.

Wherefore, the Chicago Teachers Union respectfully requests that its Motion to Intervene be granted.

                                                Respectfully submitted,

                                                  /s/  Robert E. Bloch         .

Robert E. Bloch (#6187400)
Josiah A. Groff (#6289628)
DOWD, BLOCH, BENNETT, CERVONE,
      AUERBACH & YOKICH, LLP (#12929)
8 S. Michigan Avenue, 19th Floor
Chicago, Illinois 60603
(312) 372-1361
rebloch@laboradvocates.com
jgroff@laboradvocates.com